**Charles MONROE, Plaintiff-Appellant,**

**v.**

**INTERNATIONAL UNION, UAW, et al., Defendants-Appellees.**

**No. 82–3376.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 3, 1983.

Decided Dec. 20, 1983.

---

Richard G. Ellison (argued), Cincinnati, Ohio, for plaintiff-appellant.

John A. Fillion, M. Jay Whitman, Claude D. Montgomery, Detroit, Mich., Joseph P. Buchanan, Charles Lowe, (GM Corp) (argued), Cowden, Pfarrer, Crew & Becker, Dayton, Ohio, Frederick G. Cloppert, Jr. (UAW), Green, Schiavoni, Murphy, Haines & Sgambati, Columbus, Ohio, for defendants-appellees.

Daniel G. Galant, Detroit, Mich., for General Motors.

Before KENNEDY, CONTIE and WELLFORD, Circuit Judges.

PER CURIAM.

Plaintiff-appellant, Charles Monroe, sued Local Union 696 of the United Automobile, Aerospace and Agricultural Implement Workers of America, the International Union itself (UAW), and his former employer, General Motors Corporation (GMC), under § 301 of the Labor Management Relations Act (LMRA). The union defendants filed motions for summary judgment, and GMC filed a motion to dismiss. All of the motions were granted by the United States District Court for the Southern District of Ohio, Western Division, for the reasons set out in an opinion published in 540 F.Supp. 249. We affirm the actions of the district judge.

As set out in Monroe's complaint,

on the 24th day of February, 1978, plaintiff was given an indefinite suspension, and on March 1, 1978, plaintiff was discharged by defendant GMC for allegedly threatening a fellow employee by displaying a knife and making verbal threats.

Plaintiff was hired at the Delco Moraine Division of GMC at Dayton, Ohio, in 1967, and he was a member in good standing of Local 696 of UAW, his sole representative under a collective bargaining agreement between UAW and GMC effective December 13, 1976. The suspension of Monroe was based on a violation of Shop Rule # 19, which prohibited "threatening, intimidating, coercing, or interfering with employees or supervision." Although Monroe denied any such violation of the rule with respect to an altercation with a fellow employee, he was initially suspended the day after it occurred. He immediately filed an "employee grievance" with the local agent based on his contention. On the subsequent date of discharge, the grievance was denied by GMC at a Management-Shop Committee meeting. Two other grievances were also denied.[1]

Local 696 processed the grievances through the first two steps of the procedure

---

1. In the interim between suspension and discharge, Monroe filed two additional grievances charging that he was denied representation by his committee and not furnished representation during an interview following the episode in dispute.

prescribed by the agreement, but his appeal, instituting the third step, was untimely, filed some 13 days after the Step 2 procedure instead of within the permitted 5-day period. The district court found, and the record supports, the following:

> The agreement provides that any grievance not timely appealed by the Union can be considered closed by GMC.... In any event, the union thereafter decided not to process the grievances beyond the third step, based on, among other reasons, the merits of the case against Plaintiff.

540 F.Supp. at 252.

The UAW Constitution requires its members in the case of a complaint or grievance against it to exhaust internal remedies.[2] Under the constitution, an aggrieved member is first bound to seek relief from the membership of his Local, and in the event of failure there to petition the UAW Executive Board. The final source of internal relief is either the Constitutional Convention Appeals Committee or the Public Review Board.[3]

Monroe claims that he attempted unsuccessfully to obtain internal relief through the first two internal means provided, that he orally requested a Local 696 membership vote on his grievance, and that he travelled to Detroit to International UAW headquarters. Defendants-appellees apparently do not contest this assertion.

Monroe asserts that he did not pursue internal remedies further because he felt that approach would be useless.[4] He filed suit claiming that the charges made against him resulting in discharge were "false and groundless" and "with a minimum of inves-

tigation" would have been so proven. He charged the union defendants with failure to investigate and process his grievances in violation of "their duty of fair representation ... under the ... collective bargaining agreement." Further, he charged that they acted "in bad faith ... in reckless disregard of the rights of plaintiff." GMC, in turn, was charged with "apparent collusion" with the union defendants by its "wrongful discharge" of plaintiff in violation of the agreement.

The unions' motions for summary judgment were based upon Monroe's failure to exhaust internal union remedies and upon their assertions that, in any event, they did not breach their duty under the contract as charged. Jurisdiction was properly in the district court under the LMRA. The trial court granted defendants' summary judgment motion on the grounds of Monroe's failure to exhaust.

■ Exhaustion of union appeals procedures is usually required before maintenance of a § 301 suit unless resort to the procedures is demonstrably futile. *Clayton v. International Union, UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Farmer v. ARA Services, Inc.,* 660 F.2d 1096 (6th Cir.1981); *Bsharah v. Eltra Corp.,* 394 F.2d 502 (6th Cir.1968). If plaintiff here inexcusably failed to exhaust union appeals, the failure would bar this suit not only against the unions, but also against GMC. *See Clayton,* 451 U.S. at 692 n. 20, 695, 101 S.Ct. at 2096 n. 20, 2098.

■ Factors specified as "relevant" in deciding whether exhaustion should be re-

---

2. UAW Constitution, art. 33, § 12, provides:

> It shall be the duty of any member or subordinate body who feels aggrieved by any action, decision, or penalty imposed upon him or it, to exhaust his or its remedy and all appeals therefrom under the laws of this International Union prior to appealing to a civil court or governmental agency for redress.

3. The latter Board consists "of impartial persons of good public repute," neither members nor employees of UAW. Constitution, art. 32, § 1. The Board, one of the avenues of last resort available to aggrieved employees under

the UAW constitution's internal procedures, is, according to uncontradicted evidence, an independent group of academic and social agency persons with no UAW affiliation. There is no indication whatever that this Board (including a former distinguished member of this court) would operate with any bias or ill will towards Monroe.

4. The complaint asserted that plaintiff exhausted all reasonable grievance procedures available "and that further resort by plaintiff to additional intra-union grievance procedures would be futile."

quired are hostility on the part of union officials, whether such appeals procedures would be adequate either to "reactivate" the grievance or to award the "full relief" sought, and the delay that would occur if the procedures were followed. *Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095.

■ We find that plaintiff has not made the requisite showing to excuse failure to exhaust. We agree with the district court that even assuming hostility on the part of Local 696 officials, plaintiff has made out no case of hostility on the part of the International UAW, and plaintiff takes no issue with this conclusion on appeal.[5] Nor were the union procedures inadequate under *Clayton.* Like the plaintiff in *Clayton,* Monroe seeks reinstatement and monetary relief.[6] The majority in. *Clayton* noted that if a union and an employer have

> [a]greed to allow the reinstatement of withdrawn grievances where a union tribunal reverses the union's initial decision, ... the relief available through the union's internal appeal procedures would presumably be adequate.

451 U.S. at 691 n. 18, 101 S.Ct. at 2096 n. 18. The record in this case, as noted by Judge Rice, indicates

> that a claimant, successful in the union internal appeals process, can have his grievance reinstated at the step at which the original disposition of the grievance occurred.... [This] accurately reflect[s] practices under the collective bargaining agreement.

540 F.Supp. at 257. The trial judge thus properly concluded that the internal appeal procedures were adequate here. Plaintiff has failed to "come forward with specific facts showing that there was an issue concerning the futility of the intra-union remedies." 540 F.Supp. at 259 (quoting *Willetts v. Ford Motor Co.,* 583 F.2d 852, 856 (6th Cir.1978)).

Monroe contends that he did not know that his grievances could be reactivated. The reactivation-of-the grievance agreement between UAW and GMC here was not contained in the collective bargaining agreement itself or in the union constitution. Rather, the arrangement was part of a separate "letter agreement" between UAW and GMC. Monroe asks this court to create another exception to the *Clayton* exhaustion requirement and require exhaustion of internal union remedies only when the aggrieved union member knows that he can obtain complete relief by successful completion of the union procedures or when any reactivation agreement between the employer and the union has been published.

Monroe argues that the prevention of waste of employees' resources sought by the *Clayton* Court would not be achieved if employees faced with an apparently inadequate remedy were forced to exhaust that remedy nonetheless out of fear that the union had secretly entered into an agreement making the remedy adequate. He therefore asks this court to create another exception to the *Clayton* exhaustion requirement.

The *Clayton* limited exhaustion requirement is a doctrine of discretion, reached by balancing the "policy that encourages private rather than judicial resolution of disputes arising over collective-bargaining agreements" against the desire to relieve employees from being "forced to exhaust themselves and their resources by submitting their claims to potentially lengthy internal union procedures that may not be adequate to redress their underlying grievances." *Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095. The Court struck this balance by ruling that courts have discretion to excuse failure to exhaust when one of "at least three factors" is shown to exist. *Id.*

■ Where the union member is fully advised of appeal procedures and the union

---

**5.** Plaintiff also does not argue that delay in the union appeals procedure excuses his failure to exhaust.

**6.** As pointed out in *Clayton,* 451 U.S. at 690 n. 15, 101 S.Ct. at 2096 n. 15, damages or mone-

tary relief may under *Vaca v. Sipes,* 386 U.S. 171, 197–98, 87 S.Ct. 903, 920–21, 17 L.Ed.2d 842 (1967), be apportioned between the employer and the unions in a § 301 case.

constitution mandates that they be exhausted and where those procedures give full relief as defined in *Clayton,* we hold that the balance falls in favor of requiring exhaustion. In the absence of knowledge to the contrary, a reasonable person expects that the appeal procedures would bring results: else why would they be provided and required? The balance of efficiency requires the union member to determine whether the remedy is futile. Monroe made no attempt to investigate the adequacy of these remedies. We are not dealing with any misrepresentation about the availability or efficacy of intraunion remedies.

We find support by analogy in the holding of the Seventh Circuit in *Miller v. General Motors Corp.,* 675 F.2d 146 (7th Cir. 1982). There Miller contended he was told by his local union president that any effort to use his appeal rights would be fruitless. The court held that he had the duty to know his union appeal rights and that the local president's representations could themselves be the subject of an appeal. The court stated:

> In the face of such elaborate, detailed and well-documented procedures as those developed by the UAW and set forth in its Constitution, we do not believe any employee's reliance on such representations should be viewed as reasonable.

*Id.* at 150. The *Miller* court imposed a duty to pursue appellate rights even when told at the local level that appeal would bring no benefit. We impose the lesser obligation to pursue appellate rights even though ignorant that they can result in full relief as defined in *Clayton.*

Plaintiff here failed to exhaust his intraunion remedies. That failure was not excusable. Accordingly, we AFFIRM the trial court's judgment for the defendants.